IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAYCOM SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASULTY AND SURETY COMPANY OF AMERICA, et al. <br><br> Defendants. | Civil Action No. 21-01403-CFC |

Jennifer Catherine Wasson and Carla Michelle Jones, POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware; Stephen T. Raptis, REED SMITH, Washington, District of Columbia

  *Counsel for Plaintiff*

Robert J. Katzenstein and Julie M. O'Dell, SMITH, KATZENSTEIN, & JENKINS LLP, Wilmington, Delaware

  *Counsel for Defendant*

### MEMORANDUM OPINION

April 8, 2022
Wilmington, Delaware

                                                                                       _____
                                                                                       COLM F. CONNOLLY
                                                                                       CHIEF JUDGE

Plaintiff Paycom Software, Inc. (Paycom) filed this action for breach of contract and a declaratory judgment against Defendants Travelers Casualty and Surety Company of America (Travelers) and QBE Insurance Corporation (QBE). D.I. 31 ¶¶ 46–57. Paycom alleges that Defendants have refused to pay the costs Paycom incurred to defend itself during an investigation by the Securities and Exchange Commission (SEC) and that the insurance policies Defendants issued to Paycom require coverage of Paycom's defense costs. D.I. 31 at 22–23. Pending before me is Defendants' motion to transfer the case to the Western District of Oklahoma. D.I. 13. Because Defendants show that, on balance, the convenience of the parties and witnesses and the interests of justice strongly favor transfer, I will grant Defendants' motion.

## I.     BACKGROUND

"Paycom is a Delaware corporation with its principal place of business in Oklahoma City, Oklahoma." D.I. 31 ¶ 6. Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut, and QBE is a Pennsylvania corporation with its principal place of business in New York, New York. D.I. 31 at 7–8. Both Travelers and QBE write and sell insurance policies and are licensed to do business in Delaware. D.I. 31 at 7–8.

According to Paycom's Amended Complaint (the "Complaint," D.I. 31), Travelers issued Paycom a directors and officers liability insurance policy for the April 15, 2018 to April 15, 2019 period that covered certain "Defense Expenses"; QBE issued a "first-layer excess" policy that generally provides the same coverage as Travelers's policy does, but only if costs exceed the limits in Travelers's policy. D.I. 31 ¶¶ 11, 15, 22–23. Defendants say their underwriters and Paycom's insurance broker negotiated the policies in Illinois. D.I. 15 ¶ 3; D.I. 16 ¶ 3.

The Complaint further alleges that the SEC issued an order on September 18, 2018 and subpoenas in 2019 and 2020 that required Paycom and certain of its officers and other "Insured Persons"[1] to provide 175,000 documents and repeated testimony to the SEC and its investigators. "Paycom indemnified the Defense Costs incurred by the [those individuals] in connection with the SEC['s] [i]nvestigation." D.I. 31 ¶¶ 25, 28–31. The SEC and Paycom reached a settlement on June 10, 2021, and the SEC found on July 30, 2021 that Paycom violated Section 13(b)(2) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(b)(2). D.I. 31 ¶¶ 31–34. Paycom did not admit to the SEC's findings. D.I. 31 ¶ 33.

Thereafter, Paycom sought coverage under Travelers's and QBE's insurance policies for the costs of defending itself and its officers and Insured Persons. D.I.

---

[1] "The Travelers Primary Policy defines 'Insured Person' to include, *inter alia*, Paycom's directors, officers, certain employees, and/or persons serving in 'any functional equivalent position.'" D.I. 31 ¶ 16.

2

31 ¶¶ 35–36. Travelers and QBE do not dispute that their policies covered the costs Paycom incurred defending individuals, but they have denied coverage for the costs Paycom incurred for its own defense. D.I. 31 ¶¶ 4, 38–39. Paycom brought this action on September 8, 2021 in Delaware Superior Court and sought both a declaratory judgment that Defendants had to cover Paycom's defense costs and damages for Defendants' breach of their insurance contracts. D.I. 1-1 at 1, 21–22. Defendants removed the case to this Court "[p]ursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446." D.I. 1 at 1. Defendants allege, and Paycom does not contest, that I have diversity jurisdiction over this case, since there is complete diversity of citizenship and the amount in controversy exceeds $75,000. D.I. 1 ¶ 5; D.I. 19 at 18; D.I. 31 at 22.

Defendants now ask me to transfer the case to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a). D.I. 13. Defendants argue that "[t]he Western District of Oklahoma is the most appropriate and convenient venue because it is where Paycom is headquartered, where the [insurance] Policies were issued, where key potential witnesses and documents are located, where many of the acts underlying Paycom's claim for coverage occurred, and where Paycom suffered any alleged harm under the Policies." D.I. 14 ¶ 4. Paycom opposes transfer on the grounds that Paycom is incorporated in Delaware; "[t]his action involves directors and officers liability ('D&O') insurance risks that are uniquely

3

related to Delaware; [t]his dispute likely will be decided under Delaware law; and Delaware courts are highly experienced in adjudicating D&O coverage disputes . . . ." D.I. 19 at 1.

## II.   DISCUSSION

### A.   Legal Standards

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Paycom does not dispute that this action could have been brought in the Western District of Oklahoma. D.I. 19. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer the case to that district.

Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant[s], the plaintiff's choice of forum should prevail." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), 12 interests "protected by the language of §

4

1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted). The other six interests are public in nature:

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a) to transfer the case to the Western District. D.I. 14 at 7; D.I. 19 at 3.

### B. Analysis of the *Jumara* Factors

I examine each *Jumara* factor in turn.

5

### 1.     Plaintiff's Forum Preference

The parties agree that this factor weighs against transfer. D.I. 14 at 11–12; D.I. 19 at 4–7. But they disagree about this factor's weight in the *Jumara* balancing test. Paycom contends that I should give its forum choice "paramount consideration." D.I. 19 at 7. Defendants argue that Paycom's forum choice should receive less weight because "Paycom's 'home turf' is Oklahoma, not Delaware and the only connection this action has to Delaware is that Paycom is incorporated there." D.I. 14 at 11.

In *Shutte*, the Third Circuit held that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought pursuant to § 1404(a), and that this choice "should not be lightly disturbed." 431 F.2d at 25 (internal quotation marks and citation omitted). The parties have not cited, and I am not aware of, any Third Circuit or United States Supreme Court case that overruled *Shutte*. *Jumara* cited *Shutte* favorably and reiterated the admonition that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (internal quotation marks and citation omitted). And the Third Circuit has since cited *Shutte* favorably twice. *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 401–02 (3d Cir. 2017) (citing *Shutte*, 431 F.3d at 25); *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001) (quoting *Shutte*, 431

F.3d at 25). Thus, binding Third Circuit law compels me to treat Paycom's forum choice as "a paramount consideration" in the § 1404(a) balancing analysis.

Defendants argue that I should discount Paycom's forum choice because it lacks a physical connection to Delaware. But I will instead follow Judge Stapleton's lead in *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761 (D. Del. 1975). Like Judge Stapleton, I read *Shutte's* "statement of 'black letter law' as an across-the-board rule favoring plaintiff's choice of forum." *Id.* at 763. As Judge Stapleton explained in rejecting the "home-turf" rule argued by the defendant in *Burroughs*:

> The court's decision in *Shutte* to give weight to the plaintiff's choice of forum is not an application of any of the criteria recited in [§ 1404(a)]. Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer. One can perhaps debate whether plaintiff's choice should be given any weight at all in a transfer context, but assuming it is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state. . . . [The] plaintiff's contact or lack thereof with the forum district will ordinarily be reflected in the 'balance' of conveniences, but that contact, per se, is unrelated to anything in *Shutte*, or Section 1404(a).

*Id.* at 763 n.4.

I, too, find it difficult to understand why the plaintiff's forum choice in and of itself merits less weight when the plaintiff has no ties to the selected forum or

7

even when the facts underlying the controversy occurred elsewhere. I do not mean to suggest that these two latter considerations will not impact the overall transfer analysis. On the contrary, because these considerations are subsumed and given weight under *Jumara* factors 3 (whether the claim arose elsewhere), 4 (convenience of the parties), 5 (convenience of the witnesses), 6 (location of books and records), 8 (practical considerations that could make the trial easy, expeditious, or inexpensive), and 10 (the local interest in deciding local controversies at home), a defendant seeking to transfer a case when neither the plaintiff nor the facts giving rise to the case have any connection to the selected forum will generally have less difficulty in meeting its burden to establish that the *Jumara* factors weigh strongly in favor of transfer.

### 2.     Defendant's Forum Preference

This factor favors transfer.

### 3.     Whether the Claim Arose Elsewhere

Defendants argue that the harm to Paycom occurred in Oklahoma because Defendants issued insurance policies "to Paycom at its headquarters in Oklahoma City . . . ." D.I. 14 at 13; D.I. 1-2 at 38, 80, 91. Paycom responds that the Defendants negotiated, underwrote, and "denied coverage from locations in New York and Illinois" and that "most (if not all) of the liability-generating events

resulting in Paycom's insurance claims at issue in this action . . . occurred *outside of Oklahoma*." D.I. 19 at 9 (emphasis in original).

Since it is undisputed that (1) nothing occurred in Delaware giving rise to the claims, (2) the SEC issued subpoenas to Paycom in Oklahoma, and (3) the insurance policies at issue were issued to Paycom in Oklahoma, this factor favors transfer.

### 4. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

Defendants argue that "litigation in Oklahoma should be more convenient than litigation in Delaware because Paycom is headquartered in Oklahoma City" and no party is located in Delaware. D.I. 14 at 14. Paycom responds that, while it chose Delaware and, thus, finds Delaware convenient, Defendants "cannot credibly allege that Oklahoma would be a more convenient forum for them than Delaware." D.I. 19 at 11. Defendants respond that it would "be more convenient to the parties overall to litigate where Paycom and its principals are located." D.I. 23 at 6.

All three parties are national corporations. Paycom has asserted that it finds Delaware a more convenient forum for it, and I defer to Paycom's choice. I agree with Defendants that the location of at least some potential witnesses in Oklahoma makes that forum marginally more convenient. But I agree with Paycom that Defendants—residents of Connecticut, New York, and Pennsylvania with operations in Illinois and authorization to write insurance policies in Delaware—

9

have no reasonable additional claims that Oklahoma is more convenient. Overall, I find this factor is neutral.

### 5. The Convenience of Witnesses

Under Third Circuit law, the district court is to consider the convenience of witnesses "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012) (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena"). At least six of the nine Paycom officers and employees who were subpoenaed by the SEC reside in Oklahoma. Two of those Oklahoma residents no longer work for Paycom. D.I. 16 ¶ 5. All the Oklahoma residents are outside the subpoena power of this Court, and Paycom is unable to guarantee that these individuals would consent to traveling to Delaware to appear at any trial. Neither party has identified any potential witness who resides in Delaware. Accordingly, this factor weighs in favor of transfer to Oklahoma.

### 6. The Location of Books and Records

*Jumara* instructs me to give weight to the location of books and records only "to the extent that the files [and other documentary evidence] could not be produced in the alternative forum." 55 F.3d at 879. Defendants argue that many of the files that concern the insurance policies, the SEC's investigation, and

10

correspondence between the parties are located at Paycom's Oklahoma headquarters, and none of the documents are in Delaware. D.I. 14 at 16. But it is undisputed that these documents are mostly, if not entirely, already in Travelers's possession or that Defendants maintain these documents. *See* D.I. 19 at 14–15; D.I. 23 at 8. Accordingly, this factor is neutral. *See Signal Tech, LLC v. Analog Devices, Inc.*, 2012 WL 1134723, at *3 (D. Del. Apr. 3, 2012) ("[T]here are no records identified as only being available in one of the two locations. Thus, under Third Circuit law, . . . the location of the books and records is a neutral factor." (internal footnote omitted)).

### 7.    The Enforceability of the Judgment

The parties agree this factor is neutral. D.I. 14 at 16; D.I. 19 at 16.

### 8.    Practical Considerations

*Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. Although I did not consider economic cost and logistical inconvenience of potential party employee witnesses when I assessed factors 4 and 5, it is appropriate to consider these issues in assessing "practical considerations." *See Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, 2013 WL 4496644, at *7 (D. Del. Aug. 21, 2013); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 475–76

11

(D. Del. 2013). Counsel's travel is also an appropriate consideration. *Signal Tech*, 2012 WL 1134723, at *3.

Here, the considerations are mixed. Holding a trial near Paycom's Oklahoma City headquarters will make it easier and cheaper for Defendants to obtain the appearance of current or former Paycom employees at a trial. D.I. 14 at 16. Delaware, on the other hand, is more convenient for the parties' counsel, who work in Delaware, New York, and Washington, D.C. D.I. 19 at 16. I weigh the burden for potential witnesses somewhat more heavily than that for counsel. Thus, I find this factor weighs in favor of transfer.

### 9. Relative Administrative Difficulty Due to Court Congestion

Defendants argue this factor weighs heavily in favor of transfer and cite to statistics on the comparative volume of cases and time to trial. D.I. 14 at 17–18. Paycom responds that this factor weighs against transfer, since "this case is substantially unlikely to proceed to trial[,]" and Delaware's comparatively faster time to resolve all civil actions "render[s] both time to reach trial and cases per judgeship effectively irrelevant." D.I. 19 at 17.

Paycom is correct that the time from filing to disposition is lower in Delaware (7.1 months) than in the Western District of Oklahoma (10 months). U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics, Admin. Off. of U.S. Cts. (Dec. 31, 2021),

12

https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2021/12/31-3. But given the relative caseloads of the districts, this factor favors transfer. According to the most recent data available, Delaware had 1,993 filings, or 498 per judgeship, in calendar year 2021, versus 1,837 filings, or 306 per judgeship, in the Western District of Oklahoma. *Id.* The data also shows 953 weighted filings per judgeship in Delaware and 291 in the Western District of Oklahoma. *Id.* "Weighted filings statistics account for the different amounts of time district judges require to resolve various types of civil and criminal actions." Explanation of Selected Terms, Admin. Off. of U.S. Cts. (Mar. 2012), https://www.uscourts.gov/sites/default/files/explanation-selected-terms-district-march-2012_0.pdf. Cases that require substantially more judicial resources than the average civil case receive a higher weight. *Id.*

Finally, the current data do not account for the vacancy that the elevation of my former colleague, the Hon. Judge Leonard P. Stark, to the Federal Circuit created earlier this year. Current Judicial Vacancies, Admin. Off. of U.S. Cts. (Mar. 29, 2022), https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies. The vacancy has required this Court to reassign certain cases to a vacancy docket and take other measures to manage the Court's substantial caseload. *See* In re: Vacant Judgeship, Standing Or. No. 2022-VAC-1 (Mar. 9, 2022), https://www.ded.uscourts.gov/sites/ded/files/general-

13

orders/Standing%20Order%20re%20VAC.pdf. Thus, Delaware faces a growing number of weighted filings per judgeship.

Therefore, I find this factor weighs strongly in favor of transfer.

### 10.   Local Interest in Deciding Local Controversies at Home

It is undisputed that the insurance policies in question were issued in Oklahoma. D.I. 19 at 9 n.3. Oklahoma has an interest in deciding a dispute that concerns insurance policies issued within its boundaries by a company headquartered in Oklahoma. *See SAB One, Inc. v. Travelers Indem. Co. of Connecticut*, 2014 WL 6901741, at *4 (W.D. Okla. Dec. 5, 2014) (holding that "[t]he regulatory authority of the Insurance Commissioner under the Oklahoma Insurance Code expressly encompasses the conduct of insurers in the marketing and sale of insurance policies, disclosures of information, and the adjustment of claims" and that "the Commissioner has jurisdiction over complaints against all persons engaged in the business of insurance." (citations and internal quotation marks omitted)). Paycom argues that "to the extent Oklahoma and Delaware's local interests are pertinent here (given the parties' diverse citizenship), this factor strongly favors Delaware, which has expressed a strong local and public policy interest in having coverage disputes arising under D&O policies issued to Delaware corporations adjudicated in Delaware courts." D.I. 19 at 18. Paycom cites and I know of no authority that supports this proposition where the coverage

14

dispute is not between Delaware corporations. In any event, I agree with Judge Noreika that "[a]lthough Delaware clearly has a public policy interest in the capabilities and conduct of officers and directors of Delaware corporations, this public policy is not directly related to insurance coverage disputes." *Ceradyne, Inc. v. RLI Ins. Co.*, 2021 WL 3145171, at *9 (D. Del. July 26, 2021). Accordingly, this factor favors transfer.

### 11.  Public Policies of the Fora

This factor largely overlaps the local interest factor and the parties' arguments with respect to this factor essentially repeat what they argued with respect to the local interest factor. I will therefore treat the factor as neutral.

### 12.  Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

This is a diversity case, so *Jumara* factor 12 is relevant. Defendants admit that Delaware's choice-of-law rules apply, but they argue that the controversy requires application of the "plain terms" of Travelers's and QBE's insurance policies and that "the Western District of Oklahoma is more than capable of carrying out the required coverage analysis." D.I. 14 at 20. Paycom responds that this Court decides disputes related to directors and officers insurance policies more frequently than does the Western District of Oklahoma and that Delaware law likely applies because Delaware courts apply Delaware law to the interpretation of directors and officers insurance policies issued to Delaware corporations. D.I. 19

15

at 5, 21–22. For this second point, Paycom cites *RSUI Indemnification Co. v. Murdock*, 248 A.3d 887, 896–901 (Del. 2021), in which the Delaware Supreme Court held that Delaware law applied to a directors and officers insurance policy dispute after it applied Delaware's choice-of-law test. Defendants respond that "[a]n insurance policy is a contract, and [all] Article III judges . . . are more than capable of" contract interpretation. D.I. 23 at 11.

I agree with Defendants. Article III judges, wherever located, are competent to interpret director and officer insurance policies. Moreover, at this early stage in the controversy, I am unable to determine to what jurisdiction Delaware's choice-of-law test would point. The parties have not briefed how Delaware's most significant relationship test would apply, and, as the multi-layered and fact-specific analysis in *Murdock* shows, the analysis is neither clear cut nor straight-forward. *Murdock*, 248 A.3d at 896–97 ("The contacts to be taken into account at this step are: the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties."). Accordingly, I find that this factor is neutral.

\* \* \* \*

In sum, of the 12 *Jumara* factors, six weigh in favor of transfer (one of them strongly in favor), one weighs against transfer (and is to be given paramount

importance), and five are neutral. I find that, considered in their totality, the *Jumara* factors weigh strongly in favor of transfer, and therefore I will grant the Defendants' motion to transfer venue.

The Court will enter an order consistent with this Memorandum Opinion.